UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.: 15-31915 (AMN) |
| CAROL M. CONSIGLIO, | : | Chapter 7 |
| *Debtor* | : | |
| | : | Re: ECF No. 8, 9 |
| | : | |
| JOHN G. MITRANO, | : | AP No.: 16-3013 |
| *Plaintiff* | : | |
| v. | : | |
| CAROL M. CONSIGLIO, | : | |
| *Defendant* | : | |
| | : | Re: AP-ECF No. 1 |

## MEMORANDUM OF DECISION AFTER TRIAL

### *Parties*

John G. Mitrano            *Pro se*
        *Plaintiff*            934 Temple Street
                    Duxbury, MA 02332

Carol M. Consiglio            Brian E. Kaligian
        *Defendant*            74 Cherry Street
                    Milford, CT 06460

I.        Introduction

Carol M. Consiglio ("Ms. Consiglio," or the "Defendant") filed a chapter 7

bankruptcy case, (the "Main Case"), on November 20, 2015 (the "Petition Date").  John

G. Mitrano ("Mr. Mitrano"), *pro se*, filed several motions in the Main Case, and

commenced an adversary proceeding, *Mitrano v. Consiglio*, AP No. 16-3013, against

Ms. Consiglio.  Mr. Mitrano's motions in the Main Case, as well as his complaint in the

adversary proceeding, are based on a common set of facts and, with the consent of the

1

parties, they were tried on the same day.  Having considered the evidence, argument and testimony of the parties, the court issues this memorandum of decision.

    II.    Procedural History

    Ms. Consiglio, represented by counsel, filed the Main Case on November 20, 2015.[1]  ECF No. 1.  On Schedule J, Ms. Consiglio listed two dependents, her eighty-five (85) year old mother, and her twenty-five (25) year old daughter, both of whom resided with the Debtor.  ECF No. 1.  The Debtor listed her current monthly income as $5,915.70, for an annual income of $70,988.40.  ECF No. 2.  While Ms. Consiglio listed three people in her household, she did not indicate that she received any income from either her daughter or her mother.[2]  ECF No. 2.  Relevant to the instant dispute, the Debtor listed an unsecured claim of $20,000.00 owed to Mr. Mitrano.  ECF No. 1.

    Mr. Mitrano appeared at the meeting of creditors on December 18, 2015, and briefly examined Ms. Consiglio.[3]  Pl. Ex. 2 ("341 Transcript").  On February 5, 2016, Mr. Mitrano filed three pleadings in the Main Case: a motion seeking further examination of Ms. Consiglio, ECF No. 7; an objection to Ms. Consiglio's Exemptions, ECF No. 8;[4] and a motion to dismiss (the "Motion to Dismiss"), ECF No. 9.

---

[1]  Citations to the docket in Case No. 15-31519 are noted by "ECF No." Citations to the docket of Adversary proceeding No. 16-3013, are noted by "AP-ECF No."

[2]  Specifically, on Official Form 22A-1 "Statement of Your Current Monthly Income," the Debtor listed "$0.00" in response to both Question 4; "All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support. Include regular contributions from an unmarried partner, members of your household, your dependents, parents and roommates;" and Question 10 "Income from all other sources."

[3]  The Chapter 7 Trustee adjourned the meeting of creditors, and filed a report stating there were no assets of the estate to be administered.  Docket Entries dated 12/21/2015, 12/29/2015.  The Chapter 7 Trustee has not taken a position in the dispute between the parties.

[4]  ECF No. 8 is described on the docket as "Creditor's Objection to Debtor's Claim of Exemptions Filed by John Mitrano Creditor."  However, ECF No. 8 is identical to ECF No. 7, a document entitled "Creditor's Motion for Permission for Creditor to Conduct Extract [sic] Further Testimony From Debtor."  While it appears ECF No. 8 was entered in error, Mr. Mitrano did press his objection at the evidentiary hearing in this case.

On February 16, 2016, Mr. Mitrano filed an adversary complaint (the "Adversary Complaint"), objecting to the Ms. Consiglio's discharge, commencing case number 16-3013.  AP-ECF No. 1.  Mr. Mitrano also examined the Debtor pursuant to Fed.R.Bankr.P. 2004, and a transcript of the examination was admitted into evidence at the October 27, 2016 hearing.  Pl. Ex. 1 (the "2004 Exam Transcript").

Both the Motion to Dismiss the Main Case and the Adversary Complaint contain several common allegations, specifically, that Ms. Consiglio understated the value of several assets, including furniture, clothing, her home, and a vehicle.  ECF No. 9, ¶¶ 4, 5, 6; AP-ECF No. 1, ¶¶ 4, 5, 6, 7.  Additionally, the Adversary Complaint alleged Ms. Consiglio committed bankruptcy fraud in a prior case.[5]  AP-ECF No. 1, ¶¶ 1, 2.  Finally, Mr. Mitrano's Motion to Dismiss alleged, generally, that Ms. Consiglio's household income created a presumption of abuse under 11 U.S.C. § 707(b).[6]  ECF No. 9.

Given the obvious overlap between the Motion to Dismiss, the Adversary Complaint, and Mr. Mitrano's other objections, the parties consented to adjudicating all causes of action against the debtor in one proceeding.  ECF No. 33, 00:12:30 – 00:14:30.

An evidentiary hearing and trial was held on October 27, 2016, at which time the Debtor, and the Debtor's daughter, Christina Consiglio, testified.  ECF No. 33.  Mr. Mitrano represented to the court that he had subpoenaed Lindy Perrelli, Ms. Consiglio's mother, for her testimony and for her "financials."  ECF No. 34, 00:01:30 – 00:03:30.

---

[5]  Ms. Consiglio previously received a chapter 7 discharge in 1996.  Case No. 96-30414-ASD.  Mr. Mitrano did not present any evidence or argument in support of these allegations.  Accordingly, the court deems the claim relating to the 1996 case waived.
[6]  Unless otherwise noted, all statutory citations refer to the Bankruptcy Code, Title 11 of the United States Code.

However, Ms. Perrelli did not appear at the October 27, 2016, and the court granted her motion to quash Mr. Mitrano's subpoena.  ECF No. 60, 61.

The court held closing argument in the matter on July, 27, 2017, at which time the matter was taken under advisement.  AP-ECF No. 26.

III.   Discussion

As the objecting party in the Main Case, and the plaintiff in the adversary proceeding, Mr. Mitrano had the burden of proof.  In his challenge to Ms. Consiglio's exemptions, Mr. Mitrano also had the burden to prove Ms. Consiglio's exemptions "are not properly claimed," by a preponderance of the evidence.  Fed.R.Bankr.P. 4003(c); *In re Woerner*, 483 B.R. 106, 112 (Bankr. W.D. Tex. 2012).  Likewise, as the party moving to dismiss the Main Case, Mr. Mitrano had the burden to demonstrate the extent to which income received by Lindy Perrelli or Christina Consiglio should be considered part of the Debtor's current monthly income.  *In re Justice*, 404 B.R. 506, 519 (Bankr. W.D. Ark. 2009).

The heart of this dispute concerns a personal loan Mr. Mitrano gave to Ms. Consiglio in the summer of 2010.  2004 Exam Transcript, pgs. 6-7.  While Mr. Mitrano did not filed a proof of claim in the case, Ms. Consiglio scheduled an unsecured $20,000.00 debt to Mr. Mitrano on Schedule F of her petition.[7]  ECF No. 1.  Although Ms. Consiglio testified at the 2004 examination that she made one payment to Mr.

---

[7]  Mr. Mitrano's failure to file a proof of claim does not deny him standing to challenge the Debtor's discharge.  Section 707(b) permits a "party in interest" to object to a debtor's discharge.  11 U.S.C. § 707(b).  As a creditor, Mr. Mitrano is a party in interest to the Debtor's case.  A creditor need not file a proof of claim to establish standing to object to discharge.  *Carto v. Oakley (In re Oakley)*, 503 B.R. 407, 422-23 (Bankr. E.D. Pa. 2013).

4

Mitrano, Mr. Mitrano did not contest the amount of the debt as scheduled.  2004 Exam
Transcript, pg. 8.

Several facts were not in dispute.  Mr. Mitrano conceded that Ms. Consiglio's
household consisted of three people, including her mother, Lindy Perrelli, and her
daughter Christina Consiglio.  AP-ECF No. 26, 00:10:15 – 00:10:50; 00:24:20 –
00:26:00.  Rather, Mr. Mitrano's principal challenge was that the sum total of the income
of all three persons constituting the debtor's household, exceeded the median income
for a household of three, and "forms a presumption of abuse" warranting dismissal of
the Main Case pursuant to § 707(b).  AP-ECF No. 26, 00:05:00 – 00:06:20.

Section 707(b) provides that a debtor's chapter 7 case may be dismissed if it
presents an "abuse" of the chapter 7 process.[8]  11 U.S.C. § 707(b)(1); *In re Paret*, 347
B.R. 12, 14 (Bankr. D. Del. 2006).  "'Abuse, in turn, may be determined pursuant to
either § 707(b)(2) or § 707(b)(3).'  Section 707(b)(2) 'sets forth a detailed mathematical
formula for determining whether a presumption of abuse has arisen,' and the formula is
commonly referred to as the Means Test.  It 'creates a presumption of abuse under
certain circumstances when a debtor's disposable income exceeds fixed amounts.'"  *In
re Curcio*, 387 B.R. 278, 281 (Bankr. N.D.Fla. 2008)(*first quoting In re Hayes*, 376 B.R.
55, 58 (Bankr. D. Mass. 2007); *and then quoting In re Singletary*, 354 B.R. 455, 460

---

[8]  Section 707 was significantly revised by the 2005 amendments to the Bankruptcy Code, the
Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, known as BAPCPA.  "Prior to the
2005 amendments to the Code, section 707(b) provided for dismissal of a case involving primarily
consumer debts if the granting of relief under chapter 7 would have been a substantial abuse of that
chapter. The 2005 amendments very significantly amended section 707(b) to establish new and detailed
provisions relating to dismissal "of a case filed under [chapter 7].'" Collier on Bankruptcy ¶ 707.04[1] (16th
ed.). Although pre-BAPCPA, a court could dismiss a chapter 7 case "for cause," or for "abuse," "[t]he
major objective of Congress in adding the means test in § 707(b)(2) was to limit judicial discretion from
the process of determining abuse by providing an objective standard for establishing a presumption of
abuse." *In re Hartwick*, 359 B.R. 16, 21 (Bankr. D.N.H. 2007).

(Bankr. S.D.Tex. 2006)).  Generally speaking, the "means test" requires taking a

debtor's "current monthly income," subtracting applicable expenses as provided by

statute, to determine, in essence, whether a debtor has sufficient monthly income to

repay a portion of her debts.  11 U.S.C. § 707(b)(2); *see generally In re Addison*, 2018

Bankr. LEXIS 62, *5-8 (Bankr. E.D.N.Y. January 11, 2018); *see also In re Montalto*, 537

B.R. 147, 150 (Bankr. E.D.N.Y. 2015) (Noting that "many of the statutory changes made

by Congress through BAPCPA were intended to urge debtors into repayment plans and

away from no-asset liquidations where the mathematical formula created by BAPCPA

shows an ability to repay").

> The Means Test functions as a "switching device" to steer cases either
> into Section 707(b)(2)(B) (where the debtor bears the burden of proving
> "special circumstances" to avoid dismissal (or conversion to a
> reorganization chapter on consent)) or (at the non-debtor movant's option)
> into Section 707(b)(3) (where the movant bears the burden of showing
> "abuse" either because of a bad faith filing or under the "totality of the
> circumstances" test).

*In re Longo*, 364 B.R. 161, 164 (Bankr. D. Conn. 2007).  But though the means test is

one way to determine whether a debtor's cases constitutes an "abuse" of chapter 7,

§ 707(b)(7) provides a "safe harbor."

Under § 707(b)(7), if a debtor's current monthly income is less than the "highest

median family income," of the debtor's state of residence, then no presumption of abuse

exists under § 707(b)(2).[9]  *See Paret*, 347 B.R. at 14.  Furthermore, if a debtor meets

---

[9]  Section 707(b)(6) provides a further safe harbor, though one that is not directly applicable here.  That
section limits provides "[o]nly the judge or United States trustee . . . may file a motion under section
707(b)" where the debtor's household income is less than the median family income of the debtor's home
state.  Though subsection (b)(6) would seem superfluous, in light of subsection (b)(7), the former
prevents the judge, or United States trustee, from seeking a dismissal under *any* subsection of § 707(b),
not just § 707(b)(2), if the Debtor meets the applicable income threshold.  *Paret*, 347 B.R. at 14; *Curcio*,
387 B.R. at 281-82.  However, neither of the safe harbors of subsections (b)(6) or (b)(7) relieve the court
from making the independent inquiry required of § 707(b)(3).  *Paret*, 347 B.R. at 14.  To determine

the income qualifications of § 707(b)(7), none of the United States Trustee, a chapter 7

trustee, a creditor, any party in interest, or the court may file a motion seeking to dismiss

the case under subsection (b)(2).  *Paret*, 347 B.R. at 14.

Mr. Mitrano's assertion that Ms. Consiglio's total household income did not "pass

the means test," and that the case must therefore be dismissed, conflates the means

test of § 707(b)(2), and the application of the safe harbor of § 707(b)(7).  ECF No. 34,

00:08:45 – 00:09:15.  The means test of § 707(b)(2) is one method by which the Code

determines whether a case constitutes an "abuse" of chapter 7.  In contrast, if a debtor

qualifies for the § 707(b)(7) safe harbor, no presumption of abuse exists.  The two are

independent.  In essence, Mr. Mitrano's argument is that Ms. Consiglio's household

income exceeds the amount permitted under the (b)(7) safe harbor, and that Ms.

Consiglio's case is therefore is abusive, warranting dismissal.[10]

The question therefore is not whether Ms. Consiglio's case constituted "abuse,"

but whether Mr. Mitrano had standing to bring the Motion to Dismiss in the first place.

*"If the Debtor's annualized [current monthly income] falls below the applicable median*

*income, [a] Creditor[] [is] not eligible to bring a motion under § 707(b)."*  *Curcio*, 387 B.R.

---

whether the debtor's case is an "abuse" as required under (b)(1), the court must make an independent
inquiry to determine whether the petition was filed in bad faith, or the "totality of the circumstances . . . .
demonstrates abuse."  11 U.S.C. § 707(b)(3); *Paret* 347 B.R. at 14 ("Even where no presumption of
abuse arises under section 707(b)(2), however, the Court must still determine under paragraph (b)(1)
whether the granting of relief under chapter 7 would constitute an abuse. Dismissal under paragraph
(b)(1) depends on the guidelines established by Congress in paragraph (b)(3), namely fraud or the totality
of the circumstances.").  No evidence or circumstances have been presented that the court could
conclude the Debtor filed this case in bath faith, or that, this case would constitute abuse of the provisions
of chapter 7, as contemplated by § 707(b)(3).

[10]    The court notes that the Debtor was not required to undergo the means test, as her answers on
Official Form 22A-1 indicated there was "no presumption of abuse," because she qualified for the safe
harbor of § 707(b)(7).  ECF No. 2.  "The means test is applied only if the debtor's [current monthly
income] is above the safe harbor amount set forth in § 707(b)(7)."  *Blauset v. United States Tr.*, 552 F.3d
1124, 1132 (9th Cir. 2009).  Thus, even if the court determined that the Debtor did not qualify for the §
707(b)(7) safe harbor, the debtor could still "pass" the means test on § 707(b)(2).

at 282.  The court must determine whether the "current monthly income" of the Debtor's

household of three, (on the Petition Date) was "equal to or less than" "the highest

median family income" of Connecticut, which, as of the Petition Date, was $91,131.00.[11]

11 U.S.C. § 707(b)(7); U.S. Trustee Program, Census Bureau Median Family Income

By Family Size (Cases Filed Between November 1, 2015 and March 31, 2016,

Inclusive),

https://www.justice.gov/ust/eo/bapcpa/20151101/bci_data/median_income_table.htm.

"Current monthly income includes, inter alia, 'any amount paid by any entity other

than the debtor...on a regular basis for the household expenses of the debtor or the

debtor's dependents.'"  *In re Persaud*, 486 B.R. 251, 262 (Bankr. E.D.N.Y 2013)

(*quoting* § 101(10A)(B)).  But,

[c]urrent monthly income is defined to include any amount paid by any entity toward the
household expenses of the debtor or the debtor's dependents on a regular basis. Thus,
it clearly does not include all income of nondebtor household members.  Amounts not
used for household expenses of the debtor or debtor's dependents, or not received on a
regular basis [by] the debtor or debtor's dependents, are not included.

Collier on Bankruptcy ¶ 101.10A (Alan Resnick & Henry J. Sommer, eds. 16th ed.,

2013).  With respect to Lindy Perreli or Christina Consiglio, only their contributions to

the Debtor's household expenses are counted towards determining the Debtor's current

monthly income.  *In re Ellringer*, 370 B.R. 905, 911-12 (Bankr. D. Minn. 2007); *Fraleigh*,

474 B.R. at 102 ("[§ 101(10A)(B)] plainly limits third-party income, when computing

'current monthly income,' to amounts paid 'on a regular basis for the household expense

of the debtor or the debtor's dependents…'").  While this case is somewhat unique, it is

---

[11]   While the § 707(b) refers to "current monthly income," which is defined as "the average monthly
income," the safe harbor of § 707(b)(7) annualizes that number, by multiplying it by 12.  11 U.S.C. §§
707(b)(7); 101(10A).  Because the median family income tables, as well as Official Form 22A, use an
annual income figure, as opposed to a monthly figure, this opinion does the same.

analogous to cases where only spouse files for bankruptcy.  In such cases, only the

non-filing spouses' income that contributes to household expenses is counted towards

the debtor-spouses' current monthly income.  *Persaud*, 486 B.R. at 262 ("Income of a

non-filing spouse can therefore be excluded only to the extent it is not regularly

contributed to household expenses.")

It is not disputed that Ms. Consiglio's current monthly income, as of the Petition

Date, annualized, totaled at least $70,988.40.  Mr. Mitrano also conceded that Ms.

Consiglio's household consisted of three people.[12]  AP-ECF No. 26, 00:10:15 –

00:10:50 (Mr. Mitrano: "By including the income and or economic contributions of Ms.

Consiglio's adult daughter, AND Ms. Consiglio's mother, [Ms. Consiglio] exceeds the

cutoof for the presumption of abuse."); AP-ECF No. 26, 00:24:20 – 00:26:00 (Mr.

Mitrano: "With [Ms. Consiglio's] income and the daughter's income, it comes to

$105,987.80 for the household. And that's only for two people.  That already exceeds

the cutoff limit for three people.").

However, Mr. Mitrano is incorrect is asserting that every penny of income

received by Lindy Perrelli and Christina Consiglio must be counted towards Ms.

Consiglio's current monthly income.  *Ellringer*, 370 B.R. at 911-12.  Although Lindy

---

[12]   The court is mindful of the varying approaches courts have used to determine the size of debtors'
households.  *In re Skiles*, 504 B.R. 871, 876 (Bankr. N.D. Ohio 2014) ("Courts, when applying the above
rules of statutory construction, have reached three different definitions of 'household:' (1) 'heads-on-beds;'
(2) 'IRS dependent;' and (3) 'economic unit.').  As Mr. Mitrano conceded that the Defendant's household
consisted of three people, the court need go no further.  Parenthetically, the court notes that another court
within the Second Circuit has adopted the "economic unit" test, which defines a household to "include
individuals who are financially dependent on a debtor, individuals who financially support a debtor, and
individuals whose income or expenses are intermingled or interdependent with a debtor."  *In re Fraleigh*,
474 B.R. 96, 101 (Bankr. S.D.N.Y. 2012) (*quoting In re Morrison*, 443 B.R. 378, 396 (Bankr. M.D.N.C.
2011)).  In the alternative, unrebutted testimony of the Defendant and Christina Consiglio established that
the Defendant, Lindy Perrelli and Christina Consiglio function as an "economic unit," and therefore, the
Defendant's household consists of three people for the purposes § 707(b).  *Fraleigh*, 474 B.R. at 101.

Perrelli and Christina Consiglio were members of Ms. Consiglio's household on the

Petition Date, not all of their income was included in Ms. Consiglio's current monthly

income for the § 707(b)(7) purposes.  "[O]nly the amount of such third-party income to

the extent it is used to support the debtor or the debtor's dependents" is included in

"current monthly income."  *In re Fraleigh*, 474 B.R. 96, 106 (Bankr. S.D.N.Y. 2012); *see*

*Montalto*, 537 B.R. at 151-52 (noting that only income from the non-filing spouse

"contributed on a regular basis for household expenses is included in the debtor's

'current monthly income.'").

Mr. Mitrano, as the party seeking dismissal, bears the burden to demonstrate

income from other members of Ms. Consiglio's household should be attributed to her

current monthly income.  *Justice*, 404 B.R. at 519 ("As the objecting party [creditor] had

the burden of proving that a portion of the amounts [the debtor] received were paid on a

regular basis and paid for the household expenses of the debtor and his dependents.");

*Montalto*, 537 B.R. at 153 ("The general rule is that the [United States Trustee] bears

[the] burden of proof in demonstrating that there is a presumption of abuse under §

707(b)(2)").  Likewise, Mr. Mitrano bears the burden of proof on his § 727 objection to

discharge, which he must prove by a preponderance of the evidence.  *Fraleigh*, 474

B.R. at 105.

*The Defendant's Daughter's Income and*
*Contributions towards Household Expenses.*

Christina Consiglio's contributions to the household were the subject of

conflicting evidence.  At the meeting of creditors, the Defendant testified that her

daughter made $19,000.00 per year.  341 Transcript, pg 25; Testimony of Carol

Consiglio, ECF No. 33, 03:07:00 – 03:08:00.  However, at the October 27, 2016

hearing, Christina Consiglio herself testified she made "about" $30,000.00 "last year."

Testimony of Christina Consiglio, ECF No. 33, 03:18:00 – 03:19:00.  But it is not clear to

what time frame Christina Consiglio's estimate of $30,000.00 in annual income applied,

as she later clarified that, as of the petition date, "it would be less."  Testimony of

Christina Consiglio, ECF No. 33, 03:20:45 – 03:21:45.

Christina testified she did not contribute any of her own income towards the

Defendant's household expenses.  Testimony of Christina Consiglio, ECF No. 33,

03:21:30 – 03:22:00.  The Defendant testified that she provided "75%" support of

Christina Consiglio, and received, at most $300.00 per year from her daughter, towards

the Defendant's cell phone bill.  Testimony of Carol Consiglio, ECF No. 33, 03:08:15 –

03:08:45; 03:09:50 – 03:10:15.  Christina Consiglio corroborated the testimony

regarding the payments towards the cell phone bill.  Testimony of Christina Consiglio,

ECF No. 33, 03:23:30 – 03:24:15.  When asked by Mr. Mitrano "Do you pay rent [to the

Defendant] or contribute to the household in any way," Christina Consiglio answered,

"No."  Testimony of Christina Consiglio, ECF No. 33, 03:21:30 – 03:22:15.  The

uncontroverted evidence further shows Christina Consiglio did not pay rent or contribute

to the mortgage on the Defendant's residence.  Testimony of Carol Consiglio, ECF No.

33, 03:11:30 – 03:12:00.  While the evidence regarding Christina Consiglio's salary and

income was imprecise, there was no evidence that she contributed any more than the

$300.00 per year towards the Defendant's household.  While Christina Consiglio did

testify that she uses a vehicle that is registered in her name and the Defendant's name,

(but for which the Defendant pays the insurance), there was no testimony that

Christina's contributions towards the vehicle contribute to the household expenses of

the Defendant.  Testimony of Christina Consiglio, ECF No. 33, 03:21:45 – 03:22:45.

Therefore, on an annual basis, Christina Consiglio's $300.00 contribution to the

Defendant's household is attributable to the Defendant's current monthly income.

*The Defendant's Mother's Income and
Contributions towards Household Expenses.*

Lindy Perrelli did not testify at the hearing, and all of the evidence regarding her

contributions to the Defendant's household was provided by Ms. Consiglio's own

testimony.  The uncontroverted evidence was that Lindy Perrelli is substantially

dependent on the Defendant for support.  Testimony of Carol Consiglio, ECF No. 33,

03:06:00 – 03:07:25.  The Defendant acknowledged Lindy Perrelli received some

income, half of which was from social security payments, and the other half from a

pension, but could not identify how much she received each month.  Testimony of Carol

Consiglio, ECF No. 33, 03:07:00 – 03:08:00.  Lindy Perrelli used that income to pay for

her own medical bills and personal expenses.  Testimony of Carol Consiglio, ECF No.

33, 03:12:00 – 03:12:45.  Lindy Perrilli did not pay rent of contribute to the mortgage on

the Defendant's residence.  Testimony of Carol Consiglio, ECF No. 33, 03:11:30 –

03:12:00.  However, the Defendant conceded that Lindy Perrelli contributed $540 per

month towards groceries for the household.  ECF No. 34, 00:11:00 – 00:11:45.

Therefore, on an annual basis, Ms. Perrelli's $6,480.00 contribution to the Defendant's

household is included the Defendant's current monthly income.[13]

---

[13]   The court notes § 101(10A)(B) specifically excludes from current monthly income any "benefits
received under the Social Security Act."  To the extent Lindy Perrelli's contributions to the Defendant's
household may be traceable to her social security benefits, they may have been excludable from the
calculation of the Defendant's household's current monthly income.  However, the court views the
concession by the Defendant that Ms. Perrelli contributes $540.00 per month toward groceries for the
household as waiving an argument that the origin of such funds renders them excludable under §
101(10A)(B).

Christina Consiglio's $300.00 annual contribution to the Defendant's household, plus Lindy Perrelli's $6,480.00 annual contribution to the Defendant's household, increases the Defendant's annualized current monthly income to $77,778.40. This amount is substantially less than the highest median income for a household of three, $91,131.00, for the state of Connecticut as of the petition date. Because the Defendant's household income is less than $91,131.00, she qualifies for the safe harbor of § 707(b)(7), and as such, there is no presumption of abuse. *Paret*, 347 B.R. at 14. Accordingly, § 707(b)(7) deprives Mr. Mitrano of standing to seek dismissal pursuant to § 707(b)(2). *Curcio*, 387 B.R. at 282, 285.

Additionally, Mitrano's remaining objections to the Ms. Consiglio's exemptions are overruled. ECF No. 9, ¶¶ 4, 5, 6; AP-ECF No. 1, ¶¶ 4, 5, 6, 7. As the party bearing the burden, Mr, Mitrano was required to establish, by a preponderance of the evidence, which exemptions were not property claimed. Fed. R. Bankr. P. 4003(c); *Woerner*, 483 B.R. at 112. "'To deny a debtor an exemption which is based upon a dollar limitation, the objecting party cannot carry its burden of proof by merely impeaching the Debtors' valuation. Competent evidence, which affirmatively demonstrates a higher valuation by a preponderance of the evidence, is required.'" *Woerner*, 483 B.R. at 112 (*quoting In re Shurley*, 163 B.R. 286, 291 (Bankr. W.D. Tex. 1993)). Because Mr. Mitrano simply challenged the valuation of Ms. Consiglio's exemptions, without providing any alternative valuation of the exempted property, Mr. Mitrano failed to carry his burden of proof, and his objections must therefore be denied.

Mr. Mitrano's challenge to Ms. Consiglio's "expenses," which the court interprets as an objection to the expenses listed on Schedule J, is overruled. AP-ECF No. 26,

00:16:00 – 00:17:15.  To the extent Mr. Mitrano seeks to object to Ms. Consiglio's

discharge under § 707(b)(3), that she filed her bankruptcy petition in bad faith, or that

the totality of the circumstances demonstrates abuse, the objection is barred by §

707(b)(6).  Section 707(b)(6) provides that "only the judge or United States trustee" may

make such a motion, where, as here, Ms. Consiglio's current monthly income is less

than the highest median family income of her home state.  11 U.S.C. § 707(b)(6).

Finally, the court notes Mr. Mitrano did not present specific evidence or argument

in pursuit of his objection to Ms. Consiglio's discharge under § 727, the cause of action

in the adversary proceeding.  Therefore, the court concludes Mr. Mitrano failed to carry

his burden on that claim.  *Fraleigh*, 474 B.R. at 105

IV.     Conclusion.

For the reasons stated, Mr. Mitrano's objections, ECF No. 8 are OVERRULED,

the Motion to Dismiss, ECF No. 9, is DENIED, and judgment shall be entered in FAVOR

of the Defendant in Adversary Proceeding No. 16-2013.

Dated on March 2, 2018, at New Haven, Connecticut.

Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut

14